**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

DAVID GEHL,                       :
                                  :   Civil Action No. 10-4804 (JBS)
         Petitioner,              :
                                  :
    v.                            :   **OPINION**
                                  :
DONNA ZICKEFOOSE,                 :
                                  :
         Respondent.              :

**APPEARANCES:**

Petitioner pro se
David Gehl
F.C.I. Fort Dix
Fort Dix, New Jersey 08640

Counsel for Respondent
Paul A. Blaine
Assistant U.S. Attorney
District of New Jersey
Camden Federal Building and U.S. Courthouse
401 Market Street
Camden, New Jersey 08101

**SIMANDLE**, Chief Judge

   Petitioner David Gehl, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28

U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding. The sole respondent is Warden Donna Zickefoose.

For the reasons set forth below, the Petition will be dismissed or, in the alternative, denied.

I. BACKGROUND

Petitioner David Gehl is presently confined pursuant to a conviction for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). See United States v. Gehl, Criminal No. 01-0356 (D. Minn.). Petitioner's projected release date is February 8, 2015.

On February 25, 2007, while confined at the Federal Prison Camp at Duluth, Minnesota, Petitioner was charged in Bureau of Prisons Incident Report No. 1570998 with Conduct Which Disrupts, Most Like Possession of a Hazardous Tool, in violation of the Prohibited Acts Code 199, Most Like 108;[2] Possession of Anything

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
> (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
> (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

[2] Code 108 prohibits possession of hazardous tools, including tools most likely to be used in an escape or escape attempt or those hazardous to institutional security. At the time relevant to this charge, the list of examples did not include a portable telephone, as it does now. See 28 C.F.R. § 541.3 tbl. 1.

2

Unauthorized, in violation of Code 305; and Refusing to Obey an Order, in violation of Code 307.  The description of the incident reads as follows:

> While returning the food trays from the segregation unit back to food service, I Officer Duran, noticed three inmates walking behind food service.  I noticed inmate Gehl # 10175-041 hesitating but continued walking.  I followed them to conduct a pat search.  I came up to them on the sidewalk next to food service inmate exit.  I told the three inmates to stop.  Inmate Gehl continued walking.  I yelled inmates Gehl's name and told him to submit to a pat search.  Inmate Perkins # ... was in front of me and inmate Ronimous # ... was behind Inmate Perkins.  I asked if they had anything in their pockets.  As I was talking I noticed inmate Gehl approaching me and putting his left hand in his left jacket pocket.  I then noticed something flying out of inmate Gehl's left hand.  I asked inmate Gehl, "What did you just throw there?"  I walked around the compound truck and noticed a bag with velcro on top of the snow.  I picked the bag and noticed a cell phone charger and ear piece inside.  I told inmate Gehl to turn around.  Inmate Gehl said, "That's not mine."  I then proceeded to search inmate Gehl.  Inmate Gehl then turned and faced me.  I told him to turn around again.  Inmate Gehl seemed upset as he kept telling me that the charger was not his.  I radio Cook foreman Randa and asked for his assistance to help pat down the other two inmates.  At the point inmate Gehl kept turning around facing me.  I then called for assistance.  Inmate Gehl kept moving around.  I yelled at him and told him that he could not move and that he had to stay still so I can search him.  Cook foreman Randa arrived and helped search inmate Jackson and Ronimous.  Randa yelled at inmate Gehl and told him to do what I said.  Lieutenant Post and I.D.O. Baker arrived.  I then patted inmate Gehl with no results.  I showed Lt. Post the bag containing the phone cahrger and ear piece.  I then walked the same path that inmate Gehl walked, and saw another bag on top of the snow, about five feet from the first bag I found.  Inside the second bag was a cell pone (Motorola model v170).  Inmate Gehl was taken to the Lt. Office by Lt. Post and I.D.O. Baker.

(Answer, Decl. of Tara Moran, Ex. 4.)  Based on the seriousness of the charge, the Unit Disciplinary Committee referred the matter to the Disciplinary Hearing Officer.

A DHO Hearing took place on March 15, 2007, at which time Petitioner admitted to owning the charger, but not the cellphone. He also stated that the officer did tell him twice to turn around, but stated that he was uncomfortable with the pat search. Petitioner was advised of his rights but did not request any witnesses or staff representative.  In addition to the Incident Report, the DHO considered memoranda from Lieutenant Warren Post, Cook Supervisor L. Randa, Unit Manager D. Baker, and an e-mail from employee K. Johnson.  The DHO found that Petitioner had committed Conduct with Disrupts most like Possession of a Hazardous Tool, in violation of Code 199 most like 108, and Refusing to Obey an Order, in violation of Code 307.  The DHO did not find that Petitioner had violated Code 305, Possession of Anything Not Authorized.

> Based upon the evidence annotated above, the staff members written report stating that Inmate Gehl #10175-041 was observed walking and noticed the Officer, at that time the inmate hesitated and began to move.  The officer told inmate Gehl #10175-041 to stop and submit to a pat search.  Inmate Gehl #10175-041 continued to walk away from the officer.  The officer then told inmate Gehl #10175-041 to stop and submit to a pat search.  Inmate Gehl #10175-041 began to walk to the officer, at that time the officer observed a object leave inmate Gehl #10175-041 left hand.  The officer asked him what he threw, and at that time the officer walked to the object and retrieved a bag sealed with Velcro, in the sealed bag the the officer confiscated

>     cell phone charger and a ear piece which fits a cell
>     phone.  Inmate Ghel #10175-041 informed the officer it
>     was not his several times.  Inmate Gehl #10175-041 was
>     informed by the officer to turn around.  Inmate Gehl
>     #10175-041 continued to turn to face the officer not
>     allowing him to conduct a pat search.  At the time the
>     officer radioed for assistance to aid in the shakedown
>     of Inmate Ghel #10175-041.  Several staff arrived and
>     at that time inmate Gehl #10175-041 submitted to a pat
>     search with negative results.  A search of the
>     immediate area where the first sealed bag was found
>     revealed a Motorola V170 cellphone 5 feet straight
>     ahead in a second sealed bag.

(Answer, Decl. of Tara Moran, Ex. 5.)  That same day, March 15, 2007, the DHO imposed the following sanctions:  (a) for Code 199 Most Like Code 108, disallowance of 40 days good conduct time, imposition of 60 days disciplinary segregation, 365 days loss of phone privileges, 180 days loss of commissary, and recommended disciplinary transfer, and (b) for Code 307, 30 days loss of commissary, and 180 days loss of visiting privileges.  Thereafter, on March 25, 2008, Petitioner was transferred to the Federal Correctional Institution at Fort Dix, New Jersey.

   On June 4, 2010, three years after the DHO hearing, Petitioner filed an administrative remedy with the Warden at FCI Fort Dix, which was rejected for filing at the wrong level.  Petitioner asserts that he filed his first administrative remedy in 2010 when he learned that cellphone violations were not uniformly being charged as violations of Code 199 most like 108, and were thus not uniformly resulting in similarly severe sanctions.  After his administrative remedy was rejected by the

5

Warden, Petitioner appealed the DHO report to the Regional Director on or about June 28, 2010.  That appeal was rejected for being untimely.  Petitioner filed an appeal with the Central Office on July 26, 2010.  That appeal, too, was rejected as untimely.

Here, Petitioner challenges the sanctions imposed with respect to the violation of Code 199 most like Code 108 - relating to the possession of the cell phone, charger, and earpiece.  Petitioner alleges that the failure to provide notice that the charged misconduct was of the Greatest Severity level, subjecting him to more severe punishment including the loss of good conduct time, violated due process.  He also alleges that the applicable rule was not promulgated in compliance with the Administrative Procedure Act and is void for vagueness.  Finally, Petitioner asserts that he has been treated differently from others similarly situated, in violation of his equal protection rights.  Petitioner seeks restoration of his disallowed good time credits.

Respondents have answered that the Petition should be dismissed with prejudice for failure to exhaust administrative remedies or, in that alternative, denied as meritless.  Briefing is now complete and this matter is ready for decision.

II. LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III. ANALYSIS

A. Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the

7

length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).

B.   Petitioner's Claims

Respondent seeks dismissal of the Petition on the ground that Petitioner has failed to exhaust his administrative remedies.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where

8

exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[3]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred,

---

[3] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[4]  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Disciplinary Hearing Officer (DHO) appeals are submitted directly to the Regional Director within 20 days.  See 28 C.F.R. §§ 542.14(d)(2), 542.15.  Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

There is no dispute that Petitioner has failed to exhaust his administrative remedies.  Petitioner has presented no evidence to suggest that exhaustion would have been futile. Accordingly, the Petition will be dismissed with prejudice for failure to exhaust.

In any event, recent decisions of the Court of Appeals for the Third Circuit would compel this Court to find the Petition

---

[4] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

10

meritless. The Code 108 prohibition against possession of dangerous tools likely to be used in an escape or escape attempt or otherwise hazardous to institutional security could readily be interpreted to include cellphones and cellphone accessories. The Bureau of Prisons acted within its authority in so interpreting the Code 108 prohibition; in addition, the Administrative Procedure Act does not require public comment and notice for this type of interpretive rule. Finally, Petitioner has failed to demonstrate that he was similarly situated with other prisoners who received lesser sanctions or that the discipline imposed upon him was motivated with a discriminatory purpose in violation of the Equal Protection Clause. See, e.g., Hall v. Zickefoose, 448 Fed.Appx. 184 (3d Cir. 2011) (rejecting claims that discipline under Code 108 for possession of a cell phone violates due process, under the APA or "void for vagueness" doctrine, and rejecting equal protection claims); Patel v. Zenk, 447 Fed.Appx. 337 (3d Cir. 2011) (same). See also Douglas v. Zickefoose, 2012 WL 266364, *15-16 (D.N.J. Jan. 27, 2012) (same).

## IV. CONCLUSION

For the reasons set forth above, the Petition will be dismissed with prejudice as unexhausted or, in the alternative, denied on the merits. An appropriate order follows.

                                        **s/ Jerome B. Simandle**
                                        Jerome B. Simandle
                                        Chief Judge
                                        United States District Court

Dated: **September 18, 2012**